# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| GREAT AMERICAN ASSURANCE COMPANY,<br><br>      **Plaintiff,**<br><br>  v.<br><br>KRISPY KREME DOUGHNUT CORPORATION,<br><br>      **Defendant.** | **Civil Action No. 1:23-CV-01103** |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Great American Assurance Company ("GAAC"), through counsel, complains of the acts of Defendant and alleges and says the following:

**A.** **Parties, Jurisdiction, and Venue**

1. GAAC is a corporation organized and existing under the laws of Ohio and has its principal place of business in Ohio. GAAC is an insurer licensed to issue fire and casualty insurance policies within North Carolina.

2. Defendant Krispy Kreme Doughnut Corporation ("KKDC") is a corporation organized and existing under the laws of North Carolina and has its principal place of business in Mecklenburg County, North Carolina.

3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because complete diversity of citizenship exists between GAAC and KKDC and the amount in controversy exceeds $75,000.

1

4.      Venue is proper in this Court under 28 U.S.C. § 1391(d) because, upon information and belief, KKDC maintains offices and operations in Forsyth County, and the records of the North Carolina Secretary of State, Corporations Division list KKDC's principal office address as 370 Knollwood Street in Winston-Salem. Venue is additionally proper in this Court under 28 U.S.C. § 1391(b)(2) because the insurance policies in question were issued and delivered to KKDC in this district.

**B.      The Underlying Lawsuit**

5.      In this action, GAAC seeks a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, to establish that it has no duty to defend KKDC in pending class action litigation described below.

6.      On March 3, 2023, Terrence Coleman, individually and on behalf of all others similarly situated ("Underlying Plaintiff"), commenced a lawsuit in the Circuit Court of Cook County, Illinois, bearing case number 2023CH01243 (the "Underlying Lawsuit").

7.      A true and correct copy of the complaint in the Underlying Lawsuit (the "Underlying Complaint") is attached as **Exhibit A.**

8.      In the Underlying Complaint, the Underlying Plaintiff alleges that KKDC violated the Illinois Biometric Information Privacy Act, codified as 740 ILCS/14 and Public Act 095-994 ("BIPA").

9.      In the Underlying Complaint, Underlying Plaintiff alleges he was employed by KKDC as a delivery driver in a store located in Homewood, Cook County, Illinois, from March 1, 2021 until July 9, 2022.

2

10.     During the course of his employment with Krispy Kreme, Underlying Plaintiff claims KKDC required that he and other employees use a biometric clock system to scan their fingerprints to record their time worked.

11.     The Underlying Complaint alleges Krispy Kreme violated BIPA by, among other things, failing to publicly provide a retention schedule or guideline for permanently destroying biometric identifiers and information, failing to inform Underlying Plaintiff and the class in writing that their biometric identifiers and/or biometric identifiers or information were being collected or stored, failing to inform Plaintiff and the class in writing of the specific purpose and length of term for which their biometric identifiers and/or information was being collected, stored, and/or used, and failing to obtain written releases from Plaintiff and the class before it collected, used, or stored their biometric identifiers and information.

12.     Paragraph 28 of the Underlying Complaint defines the putative class as: "All individual who had their fingerprints and/or biometric information collected, captured, otherwise obtained, possessed, used or stored by Krispy Kreme in the State of Illinois within the past five years."

13.     Underlying Plaintiff seeks class certification, injunctive relief, statutory damages to each person whose rights were violated under BIPA, pursuant to 740 ILCS 14/20, attorney's fees and costs, and interest.

14.     The Underlying Complaint alleges that there are at least 100 members of the proposed class and that each class member is entitled to $1,000 in statutory

3

damages at a minimum, meaning that the anticipated liability is alleged to be a minimum of $100,000.

**C.     The Liberty Mutual Policies**

15.     Upon information and belief, Liberty Mutual Fire Insurance Co. issued three commercial general liability primary policies to KKDC, as named insured (the "Liberty Mutual Policies"): policy TB2-651-291575-037 with policy period May 1, 2017 to May 1, 2018; policy TB2-651-291575-038 with policy period May 1, 2018 to May 1, 2019; and policy TB2-651-291575-039 with policy period May 1, 2019 to May 1, 2020. Upon information and belief, each of the Liberty Mutual Policies had a policy limit of $1,000,000 for personal and advertising injury, subject to a $150,000 self-insured retention.

16.     A true and correct copy of Liberty Mutual policy TB2-651-291575-037 with policy period May 1, 2017 to May 1, 2018 is attached as **Exhibit B**.

17.     A true and correct copy of Liberty Mutual policy TB2-651-291575-038 with policy period May 1, 2018 to May 1, 2019 is attached as **Exhibit C.**

18.     A true and correct copy of Liberty Mutual policy TB2-651-291575-039 with policy period May 1, 2019 to May 1, 2020 is attached as **Exhibit D.**

19.     The terms of the Liberty Mutual Policies are set forth on a Commercial General Liability Coverage Form (CG 00 01 04 13), together with various endorsements.

20.     The CGL Coverage Form of the Liberty Mutual Policies, COVERAGE B – PERSONAL AND ADVERTISING INJURY, provides in relevant part:

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

21. Each of the Liberty Mutual Policies contains a SECTION V – DEFINITIONS that defines various terms within such policy, including in relevant part:

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * *

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

5

* * *

 e. Oral or written publication, in any manner, of material that violates a person's right of privacy; . . .

**D. The GAAC Policies**

 22. GAAC issued three commercial umbrella insurance policies to Krispy Kreme Doughnuts, Inc., as named insured (the "Umbrella Policies"): policy number UMB 1800451 for policy period May 1, 2017 to May 1, 2018; policy number UMB9999729 for policy period May 1, 2018 to May 1, 2019; and policy number UMB9999770 for policy period May 1, 2019 to May 1, 2020.

 23. A true and correct copy of Umbrella Policy UMB 1800451 for policy period May 1, 2017 to May 1, 2018 is attached as **Exhibit E.**

 24. A true and correct copy of Umbrella Policy UMB9999729 for policy period May 1, 2018 to May 1, 2019 is attached as **Exhibit F.**

 25. A true and correct copy of Umbrella Policy UMB9999770 for policy period May 1, 2019 to May 1, 2020 is attached as **Exhibit G.**

 26. Upon information and belief, KKDC is a wholly-owned subsidiary of Krispy Kreme Doughnuts, Inc.

 27. Each of the Umbrella Policies contains a Named Insured Endorsement under which the Named Insured for the Umbrella Policies is:

 Krispy Kreme Doughnuts, Inc.

 and any company of which you own more than 50% as of the effective date of this policy but only to the extent that such Named Insureds are scheduled as Named Insureds on the policies listed in the Schedule of Underlying Insurance Policies and for no broader coverage than is provided by such policies.

6

28.     Therefore, by operation of the Named Insured Endorsement, KKDC is a named insured under the Umbrella Policies.

29.     According to the terms of the Umbrella Policies, each Umbrella Policy had a policy limit for personal and advertising injury of $25,000,000, subject to a self-insured retention of $10,000.

30.     For each policy period in question, the corresponding Liberty Mutual Policy provided coverage for personal and advertising injury on a primary basis, and the corresponding Umbrella Policy provided coverage on an excess basis.

31.     The Insuring Agreement for each of the Umbrella Policies on form GAI 6002 provides in relevant part:

## I. COVERAGE

A. We will pay on behalf of the "Insured" those sums in excess of the "retained limit" that the "Insured" becomes legally obligated to pay as damages, by reason of liability imposed by law or assumed by the "Insured" under an "insured contract," because of:

1. "bodily injury" or "property damage" that takes place; or

2. "personal injury" or "advertising injury" arising from an offense committed;

during the Policy Period and caused by an "occurrence" happening anywhere. If we are prevented by law or statute from paying such sums on behalf of the "Insured," then we will indemnify the "Insured" for them. The amount we will pay for damages is limited as described below in **Section II. LIMITS OF INSURANCE.**

32.     The Insuring Agreement for each of the Umbrella Policies also provides in relevant part:

## III. DEFENSE

7

A. We will have the right and duty to investigate any "claim" and defend any "suit" seeking damages covered by the terms and conditions of this Policy when:

1. the applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limit of Insurance of all other insurance providing coverage to the "Insured" have been exhausted by actual payment of "claims" for any "occurrence" to which this Policy applies; or

2. damages are sought for any "occurrence" which is covered by this Policy but covered by none of the underlying policies listed in the Schedule of Underlying Insurance and by no other insurance providing coverage to the "Insured."

* * *

D. Except for those instances described in Subsection A. in **Section III. DEFENSE,** we will not be obligated to assume charge of the investigation, settlement, or defense of any "claim" or "suit" against the "Insured." We will, however, have the right and will be given the opportunity to participate in the settlement, defense, and trial of any "claim" or "suit" relative to any "occurrence" which, in our opinion, may create liability on our part under the terms of this Policy. If we exercise such right, we will do so at our own expense.

**E.    KKDC's Demand for Defense**

33.    Upon information and belief, KKDC sought coverage under the Liberty Policies for the Underlying Lawsuit and requested that Liberty Mutual defend KKDC in the Underlying Lawsuit.

34.    Upon information and belief, Liberty Mutual denied coverage and declined to provide a defense under the Liberty Policies.

35.    Following Liberty Mutual's denial of coverage, KKDC requested that, in the absence of a defense under the Liberty Policies, GAAC provide a defense to KKDC in the Underlying Lawsuit on a drop-down basis.

8

36.     A true and correct copy of a letter dated July 11, 2023 from KKDC's counsel to GAAC is attached as **Exhibit H**.

37.     In this letter, KKDC's counsel asserts that the Umbrella Policies provide coverage because the Underlying Complaint alleges facts constituting "personal injury" under the Umbrella Policies.

38.     For the reasons set forth below, there is no coverage under the Umbrella Policies for the Underlying Lawsuit and GAAC does not intend to provide a defense in the Underlying Lawsuit.

39.     An actual, justiciable controversy therefore exists between GAAC and KKDC concerning whether GAAC owes a duty to defend KKDC in the Underlying Lawsuit under any of the Umbrella Policies.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment - No "Bodily Injury" or "Property Damage" Caused by an "Occurrence")

40.     GAAC restates and incorporates by reference the allegations of all preceding paragraphs.

41.     The Insuring Agreement for each of the Umbrella Policies on form GAI 6002 (Ed. 04/10) provides in relevant part:

**I. COVERAGE**

A. We will pay on behalf of the "Insured" those sums in excess of the "retained limit" that the "Insured" becomes legally obligated to pay as damages, by reason of liability imposed by law or assumed by the "Insured" under an "insured contract," because of:

1. "bodily injury" or "property damage" that takes place; or

2. "personal injury" or "advertising injury" arising from an offense committed;

during the Policy Period and caused by an "occurrence" happening anywhere. If we are prevented by law or statute from paying such sums on behalf of the "Insured," then we will indemnify the "Insured" for them. The amount we will pay for damages is limited as described below in **Section II. LIMITS OF INSURANCE.**

42.   Section V. Definitions of each of the Umbrella Policies contains various

defined terms. Among these definitions is the definition of "Advertising injury":

B. "Advertising injury" means injury, including consequential "bodily injury," arising out of advertising activities of any "Insured" as a result of one or more of the following offenses committed during the Policy Period in the course of advertising your goods, products, or services:

1. oral or written publication, in any manner, that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

2. oral or written publication, in any manner, of material that violates a person's right of privacy;

3. misappropriating another's advertising ideas in your "advertisement"; or

4. infringing upon another's copyright, trade dress, or slogan in your "advertisement."

"Advertising injury" does not include "personal injury."

43.   Section V. Definitions of each of the Umbrella Policies contains a

definition of "bodily injury":

D. "Bodily injury" means physical injury, sickness, or disease sustained by a person, including death resulting from any of those at any time. "Bodily injury" also means mental injury, mental anguish, humiliation, or shock sustained by a person, if directly resulting from a physical injury, sickness, or disease of that person.

10

44.    Section V. Definitions of each of the Umbrella Policies contains a

definition of "property damage":

> T. "Property damage" means:
>
>> 1. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or
>>
>> 2. loss of use of tangible property that is not physically injured. All such loss will be deemed to occur at the time of the "occurrence" that caused it.
>>
>> For the purposes of this insurance, "electronic data" is not tangible property.

45.    Section V. Definitions of each of the Umbrella Policies contains a

definition of "occurrence":

> O. "Occurrence" means:
>
>> 1. as respects "bodily injury" or "property damage," an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one "Occurrence";
>>
>> 2. as respects "personal injury," an offense, arising out of your business, that results in "personal injury," but only if that offense is committed during the Policy Period. All "personal injury" that arises from the same offense, or from repeated or related offenses, will be considered as arising out of one and the same "occurrence," regardless of the frequency or repetition thereof, the number or kinds of media, or the number of people or organizations making "claims" or bringing "suits";
>>
>> 3. as respects "advertising injury," an offense, committed in the course of advertising your goods, products and services, that results in "advertising injury," but only if that offense is committed during the Policy Period. All "advertising injury" that arises from the same offense, or from repeated or related offenses, will be considered as arising out of one and the same "occurrence," regardless of the frequency or repetition thereof, the number or kinds of media used, or

11

the number of people or organizations making "claims" or bringing "suits."

46. Subject to all of their terms, the Umbrella Policies provide certain coverage for damages the insured becomes legally obligated to pay because of "bodily injury," "property damage," or "advertising injury," caused by an "occurrence," as those terms are defined in the Umbrella Policies.

47. The Underlying Lawsuit seeks damages for alleged violations of BIPA, injunctive relief, and other relief arising from KKDC's alleged violation of BIPA. Underlying Plaintiff also seeks damages arising from KKDC's alleged intentional use of biometric scanning devices. None of these damages constitute "bodily injury" "property damage," or "advertising injury."

48. Moreover, for coverage to be afforded, any "bodily injury" or "property damage" must be caused by an "occurrence". The claims in the Underlying Lawsuit allege KKDC's conduct was intentional. Even if "bodily injury" or "property damage" had been alleged, such "bodily injury" or "property damage" was intentional and therefore not fortuitous or caused by an "occurrence."

49. GAAC is therefore entitled to a declaratory judgment that GAAC does not owe a duty to defend KKDC in the Underlying Action under the Umbrella Policies because the Underlying Complaint does not allege "bodily injury" or "property damage" or "advertising injury" resulting from an "occurrence" within the meaning of the Umbrella Policies.

12

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment – Following Form Endorsements)

50.     GAAC restates and incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

51.     Section V. Definitions of each of the Umbrella Policies contains a definition of "personal injury":

> P. "Personal injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses committed during the Policy Period:
>
> * * *
>
> 5. oral or written publication, in any manner, that violates a person's right of privacy.
>
> "Personal injury" does not include "advertising injury."

52.     Upon information and belief, KKDC contends that the Umbrella Policies afford coverage for the Underlying Lawsuit because the Underlying Complaint alleges an oral or written publication that violates a person's right of privacy.

53.     To the extent the Underlying Complaint alleges "personal injury" within the meaning of the main coverage form of the Umbrella Policies, the Umbrella Policies' Following Form Exclusion and Following Form Endorsements bar coverage.

54.     Section V. Definitions of each of the Umbrella Policies contains a definition of "underlying insurance":

> X. "Underlying insurance" means the insurance coverage provided under policies shown in the Schedule of Underlying Insurance, or any additional policies agreed to by us in writing. It includes

13

any policy issued to replace one of those policies during the term of this insurance that provides:

1. at least the same policy limits; and

2. insurance for the same hazards, except as to any modifications which are agreed to by us in writing.

"Underlying insurance" does not include any insurance policy specifically purchased to apply only in excess of this Policy.

55.    The Liberty Mutual Policies constitute "underlying insurance" within the meaning of the Umbrella Policies for each respective policy year.

56.    Each of the Umbrella Policies contains a Following Form Exclusion AA. stating in relevant part:

**AA. Following Form**

The following exclusions 1. through 6. do not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided by "underlying insurance" but for the exhaustion of the applicable limits of the "underlying insurance" by the payment of damages for "bodily injury," "property damage," "personal injury," or "advertising injury" covered by our Policy. However, under no circumstances will the coverage provided by our Policy for the risks described in the following exclusions 1. through 6. be any broader than the coverage provided for those risks by the "underlying insurance."

Subject to the preceding paragraph, this insurance does not apply to: . . . .

57.    Amendatory Endorsement – Following Form, GAI 6011 (Ed. 06/97) (for the 2017-2018 policy year) and Amendatory Endorsement – Following Form, GAI 7372 (Ed. 09/17 (for the 2018-2019 and 2019-2020 policy years) each state:

The first Paragraph of Paragraph AA. Following Form of Section IV. EXCLUSIONS is replaced by the following:

The following exclusions do not apply to the extent that such coverage is provided by "underlying insurance" or would have been provided by "underlying insurance" but for the exhaustion of the

14

> applicable limits of the "underlying insurance" by the payment of damages for "bodily injury", "property damage", "personal injury" or "advertising injury" covered by our Policy. However, under no circumstances will the coverage provided by our Policy for the risks described in the following exclusions be any broader than the coverage provided for those risks by the "underlying insurance".

Therefore, for the risks enumerated under Exclusion AA, as modified by endorsement, each Umbrella Policy provides no coverage for certain enumerated risks except and only to the extent that the corresponding Liberty Mutual Policy provides coverage for the same risk.

58. The endorsement called Personal Injury – Following Form, GAI 6129 (Ed. 04/10) states:

> The following exclusion is added to Section IV - EXCLUSIONS, AA. Following Form:
>
> Any liability imposed by law, or assumed by any "Insured" under an "insured contract," because of "personal injury".

Under this endorsement and the Amendatory Endorsement – Following Form (together, the "Following Form Endorsements"), taken together, the Umbrella Policies provide no coverage for "[a]ny liability imposed by law . . . for 'personal injury'" unless the Liberty Policies provide personal injury coverage under the same facts.

59. In an endorsement entitled "Personal and Advertising Injury Redefined – Definition of Publication" (LC 29 04 08 08), the Liberty Policies provide the following amended definition of paragraph 3 in the definition of "personal and advertising injury":

> e.    (1)    Oral or written "publication" directly to the public at large of material that violates a person's right of privacy;

15

> (2)    Oral or written "publication" of material that violates a person's right of privacy by misappropriation of that person's name or likeness.

60.    To afford coverage for "personal injury" under the Liberty Policies requires "publication" directly to the public at large of material that violates a person's right of privacy. The Underlying Lawsuit does not allege any publication of material to the public at large. Thus, the Liberty Policies do not provide personal and advertising injury coverage for the claims in the Underlying Action. By virtue of the Following Form Exclusion and the Following Form Endorsements, the Umbrella Policies also do not provide such coverage.

61.    GAAC is therefore entitled to a declaratory judgment that it does not owe a duty to defend KKDC in the Underlying Lawsuit due to the Following Form Exclusion and Following Form Endorsements set forth above.

## THIRD CLAIM FOR RELIEF
### (Declaratory Judgment – Access or Disclosure Exclusions)

62.    GAAC restates and incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

63.    Each of the Liberty Mutual Policies contains an endorsement entitled EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURED EXCEPTION on form CG 21 06 05 14. This endorsement provides in relevant part:

> **B.** The following is added to Paragraph **2. Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:**
>
> **2. Exclusions**

16

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

64.     The Umbrella Policies each contain an endorsement entitled

"EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL

INFORMATION AND DATA-RELATED LIABILITY - LIMITED BODILY INJURY

EXCEPTION NOT INCLUDED" on form GAI 7268 (Ed. 05 / 14) providing in

relevant part:

Exclusion **J.** under Section **IV. EXCLUSIONS** is replaced by the following:

**IV. Exclusions**

This insurance does not apply to :

**J.  Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

1. Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; . . .

17

\* \* \*

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph 1. or 2. above.

65. Through the Access or Disclosure Endorsement in the Umbrella Policies – or, in the alternative, through the Following Form Endorsements in the Umbrella Policies, which provide that coverage for personal injury imposed by law will be no greater under the Umbrella Policies than under the underlying Liberty Policies, which include the Liberty Policies' Access or Disclosure Endorsement – the Umbrella Policies bar coverage for damages arising out of any access to or disclosure of any person's or organization's confidential or personal information.

66. Here, the Underlying Lawsuit seeks damages arising out of KKDC's access to and disclosure of Underlying Plaintiffs' biometric information, which constitutes "confidential or personal information" of Underlying Plaintiffs. As such, these exclusions bar coverage.

67. Therefore, GAAC is entitled to a declaratory judgment that it does not owe a duty to defend KKDC in the Underlying Lawsuit due to the Access or Disclosure Exclusions.

**FOURTH CLAIM FOR RELIEF**
**(Declaratory Judgment – Recording and Distribution of Material in Violation of Statutes Exclusions)**

68. GAAC restates and incorporates by reference the allegations of all preceding paragraphs.

18

69.    In the Liberty Mutual Policies, **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** contains the following exclusion from coverage:

> This insurance does not apply to:
>
> * * *
>
> **p. Recording And Distribution Of Material Or Information In Violation Of Law**
>
> "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
>
> * * *
>
> (4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

70.    Similarly, Section IV. Exclusions of each of the Umbrella Policies provides in relevant part:

> This insurance does not apply to:
>
> * * *
>
> **H. Distribution Of Material In Violation Of Statutes**
>
> "Bodily injury," "property damage," "personal injury" or "advertising injury" arising, directly or indirectly, out of any act or omission that violates or is alleged to violate:
>
> * * *
>
> 4. any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting,

Case 1:23-cv-01103   Document 1   Filed 12/18/23   Page 19 of 23

recording, sending, transmitting, communicating or distribution of material or information.

71. The Underlying Lawsuit concerns violations of an Illinois state statute, BIPA, that prohibits or limits the collection and/or recording of employees' biometric information.

72. Through the Umbrella Policies' Distribution of Material in Violation of Statutes exclusion – and, in the alternative, through the Following Form Exclusion and the Following Form Endorsements in the Liberty Mutual Policies – to the extent that the Underlying Complaint alleges "personal injury," it alleges personal injury implicating the above-referenced exclusion.

73. The Recording and Distribution of Material or Information in Violation of Law Exclusions in the Liberty Policies and the Distribution of Material in Violation of Statutes Exclusion in the Umbrella Policies (together, the "Distribution of Material Exclusions") bar coverage under the Umbrella Policies.

74. Therefore, GAAC is entitled to a declaratory judgment that it does not owe a duty to defend KKDC in the Underlying Lawsuit due to the Distribution of Material Exclusions.

**FIFTH CLAIM FOR RELIEF**
**(Declaratory Judgment - Employment-Related Practices Exclusions)**

75. GAAC restates and incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

76. Each of the Liberty Mutual Policies contains an Employment-Related Practices Exclusion on form CG 21 47 12 07 that modifies the Commercial General Liability Coverage Part and states in relevant part:

20

**B.** The following exclusion is added to Paragraph 2., Exclusions of **Section I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to: "Personal and advertising injury'' to:

(1) A person arising out of any:

* * *

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; . . . .

* * *

This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

77.     Similarly, each of the Umbrella Policies contains an Exclusion K providing in relevant part:

This insurance does not apply to:

* * *

**K. Employment-Related Practices**

"Bodily injury", "personal injury," or "advertising injury," however caused, arising directly or indirectly out of any:

1. refusal to employ or promote;

2. termination of employment;

21

3. coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, molestation, humiliation, discrimination, or malicious prosecution, directed at a person, or other employment-related practice, policy, act, or omission; or

4. consequential "bodily injury," "property damage," "personal injury," or "advertising injury," as a result of paragraphs 1. through 3. of this exclusion.

This exclusion applies whether the injury-causing event described in paragraphs 1. through 4. occurs before employment, during employment, or after employment of that person, and whether the "Insured" may be held liable as an employer or in any other capacity, and to any obligation to share damages with or to repay someone else who must pay damages because of the "bodily injury," "property damage," "personal injury," or "advertising injury."

78.    The Underlying Lawsuit arises from an employment-related "practice," "policy," "act," or "omission" in connection with the collection of Krispy Kreme's employees' biometric data to track employees' time. As such, the Umbrella Policies' Employment-Related Practice Exclusions – or, in the alternative, the Following Form Exclusion and the Following Form Endorsements, which confine coverage for "personal injury" under the Umbrella Policies to no greater than coverage under the underlying Liberty Policies – bar coverage for the claims in the Underlying Action.

79.    Therefore, GAAC is entitled to a declaratory judgment that it does not owe a duty to defend KKDC in the Underlying Lawsuit due to the Employment-Related Practices Exclusions in the Umbrella Policies and the Liberty Policies.

WHEREFORE, GAAC prays the Court enter judgment declaring that GAAC does not owe a duty to defend KKDC in the Underlying Lawsuit under any of the Umbrella Policies and grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 18th day of December, 2023.

**GREAT AMERCIAN ASSURANCE COMPANY**

/s/ John S. Buford_____

John B. Mumford, Jr. (NC Bar No. 56900)
John S. Buford (NC Bar No. 28455)
HANCOCK, DANIEL & JOHNSON, P.C.
4701 Cox Rd., Suite 400
Glen Allen, VA 23060
jmumford@hancockdaniel.com
jbuford@hancockdaniel.com
Telephone: (804) 967-9604
Facsimile: (804) 967-9888
*Counsel for Plaintiff Great American*
*Assurance Company*

Case 1:23-cv-01103   Document 1   Filed 12/18/23   Page 23 of 23